SLAUGHTER *v.* CORNIE STAVE COMPANY.

Opinion delivered February 21, 1927.

1. LOST INSTRUMENTS—SUFFICIENCY OF PROOF.—Parol evidence to prove the contents of a lost deed should show that the deed was duly executed as required by law and show substantially all its contents by clear, convincing and satisfactory evidence.

2. LOST INSTRUMENTS—SUFFICIENCY OF PROOF.—In a suit to quiet title where defendant's claim under mesne conveyances from plaintiff, a finding that the contents of an alleged lost deed from plaintiff to defendant's predecessor were not established *held* not against preponderance of the evidence.

3. ADVERSE POSSESSION—PAYMENT OF TAXES.—The title to unimproved and uninclosed lands will not be barred by the payment of taxes thereon by one claiming under color of title for a period of less than seven consecutive years, and such continuity is broken where the owner brings suit for the land within seven years from the date of the first payment.

4. ESTOPPEL—CONDUCT OF PLAINTIFF.—Where plaintiff did nothing either by its silence or conduct to lead the defendant to believe that it would not assert its title to the land in controversy, it will not be estopped to assert its title.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens,* Chancellor; affirmed.

STATEMENT OF FACTS.

The Cornie Stave Company brought this suit in equity against A. E. Slaughter and others to cancel, as a cloud on its title, certain deeds to forty acres of land in Union County, Arkansas. The suit was defended on the ground that the plaintiff had conveyed its title to the grantor of the defendant Slaughter.

According to the evidence for the plaintiff, the forty acres of land in controversy was purchased by the Cornie Stave Company from J. L. Goodwin on the 10th day of March, 1907, for $120. The plaintiff had large tracts of timber land, and was not selling any land during 1907 and 1908. The plaintiff paid the taxes on the land from 1907 to 1914 inclusive. After that time, when the plaintiff went to pay its taxes, it was always informed by the collector that the taxes had been paid by A. E. Slaughter. The plaintiff kept a record of the lands owned by it, showing the date on which each tract was purchased and the date on which it was sold. The records did not show the sale of any land belonging to the plaintiff from 1907 to 1915. The matters above set forth were testified to by the president and two vice presidents of the plaintiff company.

According to the testimony of the president of the company, if any deed had been executed between the 18th of March, 1907, and the 8th of December, 1907, the date on which R. E. L. Combs died, he would have had to sign it. He did not sign any deed during that time. He kept a minute-book showing the minutes of the meetings of the stockholders and board of directors of the Cornie Stave Company during this time. This record did not contain a recitation authorizing the sale of the tract of land in controversy. All three of the witnesses testified that, if the tract of land in controversy had been sold to R. E. L. Combs or to any one else, the records of the company would have shown the date of the sale, the person to whom sold, and the amount for which the land was sold.

According to the testimony of Annie A. Combs, her husband died December 8, 1907. He had been in the service of the plaintiff company since that company was organized. She became the administratrix of her husband's estate, and sold this tract of land along with other lands belonging to her husband's estate, acting as such administratrix. Her brother became the purchaser at the sale, and, after holding the land for a year or two and paying taxes on it, he conveyed it to her. The record

shows that her brother conveyed the land in question to Mrs. Annie A. Combs on August 1, 1910, and that the deed was duly filed for record. On November 10, 1913, Mrs. Annie A. Combs .conveyed the land to A. E. Slaughter. This deed was duly filed for record. The record also shows that this suit was instituted April 27, 1921, and that A. E. Slaughter paid taxes on the land in controversy for the years 1915 to 1920 inclusive. Mrs. Annie A. Combs also testified that there was a deed on record from the plaintiff to her husband to the land in controversy.

The attorney who represented the estate of R. E. L. Combs when the lands belonging to that estate were sold at administrator's sale testified that, according to his recollection, he made an examination into the title of this particular tract of land and found the title to be clear, and recollected that there was a deed from the Cornie Stave Company to R. E. L. Combs. At that time the plaintiff was not trying to acquire land, but timber. Combs was buying land for the plaintiff.

Another witness for the defendants testified that R. E. L. Combs was a timber buyer for the plaintiff, and he recollected seeing a deed from J. L. Goodwin to the plaintiff for the land in controversy. The witness, at that time, was keeping the books of the company, and carried it along as belonging to the company. In 1914 he severed his connection with the company. Prior to his death Combs had a settlement with the plaintiff, and several tracts of timber were deeded to him by the plaintiff. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the plaintiff, and a decree was entered of record canceling the deeds as prayed for in the complaint, and quieting the title in the plaintiff in so far as the rights of the defendants are concerned. The case is here on appeal.

*Betts & Betts,* for appellant.

*Patterson & Rector,* for appellee.

HART, C. J., (after stating the facts). A. E. Slaughter seeks to reverse the decree quieting the title in the Cornie Stave Company upon the ground that it conveyed the land in controversy to R. E. L. Combs; that, after Combs' death, the tract was sold with other lands belonging to his estate at administrator's sale; and that the defendant, Slaughter, acquired title by mesne conveyances from the purchaser at the administrator's sale. It is claimed by counsel for the defendants that a deed from the plaintiff to R. E. L. Combs was executed prior to his death, and that the deed had been lost, and, for that reason, could not be produced at the trial.

It is the settled rule in this State that parol evidence to prove the contents of a lost deed should show that the deed was duly executed as required by law, and should show substantially all its contents by clear, convincing and satisfactory evidence. *Hooper* v. *Chism,* 13 Ark. 496; *Nunn* v. *Lynch,* 73 Ark. 20, 83 S. W. 316; *Kennedy* v. *Gilkey,* 81 Ark. 147, 98 S. W. 969; *Queen* v. *Queen,* 116 Ark. 370, 172 S. W. 1018; *Wasson* v. *Walker,* 158 Ark. 4, 249 S. W. 29; and *Langston* v. *Hughes,* 170 Ark. 272, 280 S. W. 374.

An excellent statement of the rule was made by Chief Justice Marshall in *Tayloe* v. *Riggs,* 1 Pet. 591. It is as follows: "When a written contract is to be proved, not by itself but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proved satisfactorily, and, if that cannot be done, the party is in the condition of every other suitor in court who makes a claim which he cannot support. When parties reduce their contract to writing, the obligations and rights of each are described and limited by the instrument itself. The safety which is expected from them would be much impaired if they could be established upon uncertain and vague impressions made by a conversation antecedent to the reduction of the agreement." This rule

was quoted with approval in *Hooper* v. *Chism,* 13 Ark. 496, and has been followed by the court ever since.

It is evident that, if any loose requirement was sufficient to establish a lost instrument, the very object which the statute of frauds seeks to prevent would be encouraged. Tested by this rule, the contents of the deed claimed to have been lost was not established to the satisfaction of the chancellor, and it cannot be said that his finding of fact on this point is against the clear preponderance of the evidence. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160.

It is true that Mrs. Combs says there was a deed on record from the plaintiff to her husband to the tract of land in controversy. Her husband owned a good many tracts of land, and she was obviously mistaken. If the deed was upon the records in the clerk's office, it would have been a very easy matter to have introduced a certified copy of it in evidence. It is also true that the attorney who represented Mrs. Combs in the administrator's sale testified that, according to his recollection, there was among the title papers exhibited to him at the time a deed from plaintiff to Combs. It is not to be expected that a busy lawyer could definitely and certainly recollect a matter which occurred so many years ago, and especially where numerous other tracts were offered at the same sale. The proof on the part of the plaintiff shows that a record was kept of the lands purchased and sold by the plaintiff, and that this record does not show any sale of this particular land. The record does show the date of its purchase by the plaintiff, as well as the person from whom it was purchased and the price paid for it. The president of the company testified that he did not sign a deed to any land between the date of the purchase by the plaintiff of the tract of land in controversy and the date of the death of R. E. L. Combs. Then, too, both of the vice presidents of the company say that there was no sale of any land belonging to the company during the years of 1907 and 1908.

Again, it is insisted by counsel for the defendants that Slaughter has acquired title by adverse possession. We cannot agree with counsel in this contention. The present suit was instituted on April 27, 1921. Slaughter paid the taxes on the land from the year 1915 to 1920, both inclusive. The lands were wild and unoccupied, and there were not seven years from the date of the first payment of taxes by Slaughter until the institution of the present suit.

In *Updegraff* v. *Marked Tree Lumber Co.,* 83 Ark. 154, 103 S. W. 606, the court said: "And we think it necessarily follows from that conclusion that there must be an unbroken possession for a period of seven years from the date of the first payment, and that the mere payment of taxes seven times is not of itself seven years' possession, where the possession is broken by the commencement of an action within seven years after the date of the first payment. We are therefore of the opinion that the appellee failed to show title by limitation."

To the same effect see *Bradley Lumber Co.* v. *Langford,* 109 Ark. 594, 160 S. W. 866; *Fenton* v. *Collum,* 104 Ark. 624, 150 S. W. 140; and *Paragould Abst. & Real Est. Co.* v. *Coffman,* 100 Ark. 582, 140 S. W. 730, L. R. A. 1915B 1006.

As we have just seen, the plaintiff brought this suit within the period of time allowed by law, and he could not in any event be barred on account of laches until payment of taxes had been made for at least seven years by one making same under color of title. *Fordyce* v. *Vickers,* 99 Ark. 507, 138 S. W. 1010.

In the present case the plaintiff had the paper title to the land in controversy, and brought this suit to enforce its legal title. Mere submission to the injury for any time short of the period limited by statute for the enforcement of the right of action cannot take away such right, although, under the name of laches, it may afford a ground for refusing relief under some peculiar circumstances. *Davis* v. *Neal,* 100 Ark. 399, 140 S. W. 278;

*Beattie* v. *McKinney,* 160 Ark. 81, 254 S. W. 338; and *Galloway* v. *Battaglia,* 133 Ark. 441, 202 S. W. 836.

In the case at bar the plaintiff did nothing either by silence or conduct to lead the defendant to believe that it would not assert its title to the land and thereby suffer the defendant to enter into obligations or incur liabilities which he would not otherwise have done. In short, the plaintiff did nothing whereby the defendant was prejudiced and which might make it inequitable to assert title, as was the case in *Avera* v. *Banks,* 168 Ark 718, 271 S. W. 970.

On the question of estoppel, argued by counsel for the defendants, but little need be said. The record title to the land in controversy is in the plaintiff. There is no fact in the record tending to show that the defendants were in any manner deceived by any act or conduct on the part of the plaintiff. No grounds of equitable estoppel are proved by the defendant. See *Watson* v. *Murray,* 54 Ark. 499, 16 S. W. 292; *Waits* v. *Moore,* 89 Ark. 19, 115 S. W. 931; *Brown* v. *Norvell,* 96 Ark. 609, 132 S. W. 922; and *Davis* v. *Neal,* 100 Ark. 399, 140 S. W. 278.

It follows that the decree must be affirmed.