BAER *v.* COLEMAN.

5-2762                                            360 S. W. 2d 761

Opinion delivered October 8, 1962.

*O. W. "Pete" Wiggins,* for appellant.

*Martin, Dodds & Kidd,* for appellee.

ED F. McFADDIN, Associate Justice. The only question to be decided is whether the Trial Court should be sustained in its holding that the plaintiff (appellee) had established a lost deed by the required *quantum* of evidence.

Mr. J. B. Coleman, Sr. was married three times, and died in 1934. Appellee, Joseph B. Coleman, is the youngest child of Coleman, Sr. The appellants are the children or descendants of Coleman, Sr. by prior marriages. The mother of appellee was Emma Powell Coleman, now deceased; and appellee is her only heir. Coleman, Sr. owned eight lots in McIntosh's Second Addition to Little Rock. In March 1930, Mr. Coleman deeded two of the lots to his oldest daughter, Mrs. Elsie C. Baer; and it was and is appellee's contention that on or about the same time, Mr. Coleman, Sr. deeded the remaining six lots (here in litigation) to Mrs. Emma Powell Coleman; and that appellee owns the six lots by inheritance from his mother.

It was and is the contention of the appellants that due proof of the execution of said deed from Coleman, Sr. to Mrs. Emma Powell Coleman has not been made and, therefore, the appellants and appellee are co-tenants of said six lots. The Chancery Court held that appellee had established the lost deed from Coleman, Sr. to Emma Powell Coleman; and appellants challenge that holding.

At the outset, we recognize the established rule for proof of a lost deed to be as stated by Justice Millwee in *Schwartz v. Hardwicke,* 229 Ark. 134, 313 S. W. 2d 832:

"It is well settled by our own cases, and the authorities generally, that the evidence required to prove and establish a lost deed must be clear, satisfactory and con-

vincing, though it need not be undisputed. *McCulloch* v. *McCulloch*, 213 Ark. 1004, 214 S. W. 2d 209. In *Dillard* v. *Harden*, 197 Ark. 586, 124 S. W. 2d 10, we said it is sufficient if the testimony which the court credits and accepts as true shows clearly, concisely and satisfactorily that the deed sought to be restored had in fact been executed and delivered. We have also said that the burden is upon one who claims under an alleged lost instrument to establish its execution, contents and loss by the same *quantum* of proof. *Slaughter* v. *Cornie Stave Company*, 172 Ark. 952, 291 S. W. 69.''

With the applicable law thus stated and understood, we proceed to examine the evidence to see whether it fulfills the requirements. Mrs. Katie Camp testified: that she was unrelated to the parties, but was well acquainted with Joseph B. Coleman, Sr. and his wife, Mrs. Emma Powell Coleman, having known them since 1930 when they were living near her in Levy; that one Sunday afternoon the Colemans were visiting at the home of Mrs. Camp, and **Mr. Coleman** made the statement that he had deeded two lots to his oldest daughter (Mrs. Baer), and ''I made the others to Emma... I made a deed for them ...''; that after Mr. Coleman's death the witness saw the warranty deed from Coleman, Sr. to Emma Powell Coleman, conveying the lots here involved; that Mrs. Coleman kept the deed in a little green box; that Mrs. Emma Powell Coleman claimed the lots as her own, and witness went with Mrs. Coleman to see the lots in 1937 or 1938, which was the last time the witness saw the deed; and that the deed had Mr. Coleman's signature, but witness could not be positive about an acknowledgment.

Mrs. Helen Harris Oates, a sister of Emma Powell Coleman and an aunt of the appellee, testified that she lived near Mr. Coleman, Sr. and Emma Powell Coleman when they were married in 1928; that this was Emma Powell Coleman's first marriage; that Emma Powell Coleman owned a house in Levy and the Colemans lived there for some time; and that Mr. Coleman died there on April 24, 1934. Mrs. Oates testified positively and unequivocally that she saw the deed from J. B. Coleman, Sr.

to Emma Powell Coleman; that witness saw the signature of the grantor on the deed and the lot numbers of the property; that the deed was duly notarized; that Mrs. Coleman kept the deed in a little green box; that Mrs. Coleman paid the taxes on the lots as long as she lived; and that witness paid the taxes for appellee each year thereafter.

The deposition of Mrs. Elsie Baer (deceased at the time of the trial) was introduced; and in the deposition Mrs. Baer stated that Mrs. Emma Powell Coleman told Mrs. Baer after the death of Mr. Coleman that he had deeded the lots in question to Mrs. Coleman; and Mrs. Baer accepted it as a fact and so believed for many, many years, until it was learned that no recorded deed could be found.

Mrs. Dillon, a daughter of Coleman, Sr. by a previous marriage, testified that she never heard of any deed from her father to Emma Powell Coleman; but she was confronted by her deposition in which she had conceded that for a period of twenty years she had been under the impression that the lots in question had been deeded to Emma Powell Coleman. In the deposition Mrs. Dillon also conceded that it was only when no deed was found of record that the appellants assumed the position of denying the deed. The appellants furthermore contend that the appellee had first claimed title by adverse possession, and only by subsequent amendment claimed the title by a lost deed.

Without detailing all the evidence, a careful study convinces us that the Chancery Decree should be sustained. For more than twenty years the taxes on the property had been paid for appellee and acts of ownership exercised without any question, and the appellants seemed to believe that Emma Powell Coleman had received a deed for the property. When no deed was discovered of record, some of the appellants undertook to deny the execution of any deed.

Affirmed.