W. R. TAYLOR et al *v.*
Kenneth SCOTT et al

84-237                                    685 S.W.2d 160

Supreme Court of Arkansas
Opinion delivered March 4, 1985

*Peel & Eddy,* by: *David L. Eddy,* for appellants.

*Bullock & McCormick,* by: *David H. McCormick,* for appellees.

GEORGE ROSE SMITH, Justice. The key question in this case, on undisputed facts, is this: When the owner of the record title to a tract of land conveys an undivided half-interest in the minerals to another person, but the mineral deed is not recorded for 18 years, and a stranger to the title takes adverse possession of the land a year after the execution of the unrecorded mineral deed and continues his adverse possession for more than seven years, does the adverse possessor acquire title to the constructively severed half-interest in the minerals? The chancellor correctly decided that the adverse possessor does not acquire title to the severed mineral interest. We therefore affirm his decree.

In 1937, Ben H. Qualls and his wife, holding record title to a 120-acre tract of land, conveyed an undivided half-interest in the minerals to G. W. Nowlin and his wife. The Nowlins did not record the deed until 1956. In 1938, A. W. Austin and his wife, who appear to have been in adverse possession of the 120 acres, conveyed the land to Joe Chenowith. That deed was promptly recorded. Chenowith and his successors in title, the appellants, have been in possession of the land ever since, using it primarily as pasture.

In 1983, the appellees, successors in title to the half-interest in the minerals that had been conveyed to the Nowlins, brought this suit to quiet their title to that half-interest. The appellants defended on the ground that the constructive severance created by the 1937 mineral deed was not effective against them until that deed was placed of record in 1956, at which time they had held the surface adversely for some 18 years.

The appellants recognize our settled rule that when a mineral ownership has been severed by deed from the surface ownership, adverse possession of the surface is ineffective against the owner of the minerals unless the possessor

actually invades the minerals by opening mines or drilling wells and continues that action for the necessary period. *Claybrooke* v. *Barnes,* 180 Ark. 678, 22 S.W.2d 390, 67 ALR 1436 (1929); *Bodcaw Lbr. Co.* v. *Goode,* 160 Ark. 48, 254 S.W. 345, 29 ALR 578 (1923). The appellants insist, however, that under our law the severance is not effective until the deed is recorded.

The cases relied upon do not support that view. In *Thompson* v. *Graves,* 281 Ark. 492, 665 S.W.2d 268 (1984), we did refuse to give effect to an asserted mineral reservation in an unrecorded lost deed, but the reason was that the contents of the lost deed were not proved clearly and convincingly. In *Skelly Oil Co.* v. *Johnson,* 209 Ark. 1107, 194 S.W.2d 425 (1946), we did say that the placing of three mineral deeds of record constituted a constructive severance of the minerals. The opinion shows, however, that all three deeds were promptly recorded, with no third-party rights arising between the execution of the deeds and their recordation. We think the severance actually occurred when the deeds became effective, not when they were recorded, but that distinction was of no importance in the case. Hence the language relied upon by these appellants was dicta.

As a matter both of settled law and of simple justice, there is no reason why an adverse possessor should benefit from the record owner's failure to record a deed. A trespasser does not examine the records at the courthouse before deciding to appropriate another's property. He does not rely upon the record, nor is he misled by its absence. Our recording statute gives priority to the first recordation only as between purchasers deriving their interests from a common grantor. *Richardson* v. *Fisher,* 236 Ark. 612, 367 S.W.2d 440 (1963).

The same principle applies to deeds that bring about a constructive severance of the minerals from the surface. In the language of Professor Kuntz:

> A failure to record the instrument by which the severance was accomplished may or may not be significant. If the subsequent possessor took from the same

chain of title and claimed as a bona fide purchaser, obviously the failure to record a deed by which a mineral interest was severed would be very significant and would control his rights under local statutory law. If, however, the subsequent possessor was an adverse possessor not under the same chain of title, recording would have no significance. An adverse possessor does not occupy the status of a purchaser, and an unrecorded severance should be effective as to him.

Kuntz, Oil and Gas, § 10.4 (1962). The same reasoning was followed in *United Fuel Gas Co.* v. *Dyer,* 185 F. 2d 99 (4th Cir. 1950). There Judge Parker first noted that an adverse possessor is charged with notice of a mineral severance appearing in his own chain of title, but the rule does not apply to an adverse possessor not claiming under the same chain. From the opinion:

Such adverse possessor is manifestly not entitled to any notice with respect to the estate of the true owner which he is invading. On the contrary, it is he who must give notice by exercising possession of such character as will apprise the true owner that the right of the latter is challenged.

We have no similar case in Arkansas relating to mineral deeds, but in an analogous situation we held that the purchaser at a tax sale took subject to an unrecorded timber deed, because the recording statute benefits a subsequent purchaser from the common grantor, not a purchaser at a tax sale. *Brewer* v. *Fletcher,* 210 Ark. 110, 194 S.W.2d 668 (1946).

The preceding discussion also answers the appellants' argument that when Chenowith, an adverse possessor, sold the tract to Carrel Luningham in 1945, Luningham acquired the mineral half-interest as a bona fide purchaser. Luningham, however, was necessarily charged with notice that his grantor did not have the record title to the land. Luningham must therefore be charged with knowledge that he was not acquiring a perfect record title; so he cannot claim to be a purchaser without notice of possible outstanding flaws in his grantor's title.

Counsel for the appellants insist that the position we are taking will "create uncertainty in the oil and gas industry and lack of confidence in the real estate records." We do not think so. When a lawyer examines an abstract of title and finds that the apparent owner's title rests only on adverse possession, a rare situation, he is at once on notice that there may be flaws in the title, such as the interest of a minor or insane heir of a deceased holder of the record title. There is no reason to confer a windfall on the adverse possessor by giving him the benefit of a possible record that he would not have seen or relied on even if it had existed. On the other hand, our law has long protected the owner of a mineral interest against the loss of his title to an adverse possessor of the surface only. Our present holding is in harmony with our existing case law.

Affirmed.